IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BOBBY RICKS, JR.,<br><br>Defendant. | Cr. No. 15-00132 MWJS<br><br>ORDER DENYING DEFENDANT'S REQUEST FOR POST-CONVICTION MODIFICATION OF PRESENTENCE INVESTIGATION REPORT |

## INTRODUCTION

Defendant Bobby Ricks, Jr., was sentenced on drug trafficking offenses almost a decade ago, and his convictions have been final for nearly as long. But he has now filed a request that a portion of his presentence investigation report (PSR) be modified. ECF No. 214. The government opposes, arguing that a post-conviction request for a PSR modification is "inappropriate," ECF No. 217, at PageID.1159, and, alternatively, that the request lacks merit, *id.* at PageID.1160. For reasons explained below, the motion is DENIED.

## BACKGROUND

On September 28, 2015, Ricks pled guilty to a two-count indictment charging him with participation in a drug trafficking conspiracy and a substantive drug trafficking offense. ECF No. 104. In advance of sentencing, and as required by Rule 32(e)(2) of the

Federal Rules of Criminal Procedure, the Probation Office supplied Ricks' counsel and the government with a draft PSR.  ECF No. 109.  The draft noted that, although Ricks had no co-defendants under his indictment, there were several "related cases" initiated through separate charging instruments.  *Id.* at PageID.172-73 (capitalizations omitted).  In particular, the draft PSR identified Christopher Allen Woolem, Vyra Kaopua, Anthony Hoang-Nguyen Muller, Gregory Michael Sadie, Kiplen D. Scott, Min Ki Kim, and Aman Berhane—all of whom were charged with participation in a drug trafficking conspiracy—as defendants in related cases.  *Id.*

The draft PSR also laid out, across twelve paragraphs, the "Offense Conduct" associated with Ricks' guilty plea.  *Id.* at PageID.175-78 (PSR ¶¶ 12-23).  Those paragraphs identified Ricks as a source of "multi-pound quantities of methamphetamine, multi-ounce quantities of cocaine, and user quantities of marijuana" purchased by Sadie.  *Id.* at PageID.175 (PSR ¶ 14); *see also id.* at PageID.176 (PSR ¶ 16) (describing recorded telephone call in which Ricks "informed [Sadie] that a 10-pound shipment of methamphetamine was due to arrive the next day in Honolulu").  They also explained that, after his arrest, Ricks made a statement in which he identified Berhane as a "business partner"; Kim as "his main customer" (who in turn sold drugs to "John"); "Barber" in California as one of his sources of supply; "3 females" as couriers he used to "transport money from Honolulu to California"; and one of his cousins, who

Ricks said had assisted with delivering the money to his source of supply in California and transporting methamphetamine to Honolulu. *Id.* at PageID.177 (PSR ¶¶ 20, 21).

The number of participants in a federal offense can make a difference for a defendant's sentence. Under § 3B1.1(a) of the United States Sentencing Guidelines, a defendant's offense level—one of the two main inputs for computing a defendant's advisory guidelines range—is increased by four levels if they are "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." And in Ricks' draft PSR, the Probation Office included this four-level offense. ECF No. 109, at PageID.181 (PSR ¶ 37).

Through counsel, Ricks submitted a response to the draft PSR, as authorized by Rule 32(f) of the Federal Rules of Criminal Procedure. ECF No. 117. In it, Ricks denied having sold cocaine to Sadie, though he did not dispute distributing methamphetamine or marijuana to him. *Id.* at PageID.246-47. In further support of this cocaine-related objection, Ricks added that no other charged defendant "was even charged with a conspiracy that involved cocaine by the government." *Id.* at PageID.246. Nonetheless, Ricks did not dispute that he was involved in an extensive drug trafficking conspiracy concerning methamphetamine. *See id.* (noting only that the "entire government investigation related to methamphetamine dealing"). And he did not dispute either the draft PSR's identification of participants in the methamphetamine-related drug

3

trafficking conspiracy or the four-level enhancement flowing from his leadership or supervisory role over that criminal activity.

The Probation Office issued a final PSR. ECF No. 118. It accepted Ricks' argument that he was not responsible for cocaine distribution and modified the description of the offense conduct accordingly. *Id.* at PageID.280. But without defense objection, the final PSR continued to identify Woolem, Kaopua, Muller, Sadie, Scott, Kim, and Berhane as defendants in related cases, and continued to include facts demonstrating the participation of Sadie, Berhane, Kim, Barber, three female couriers, and Ricks' cousin as participants in his methamphetamine-focused drug trafficking conspiracy. *Id.* at PageID.258-61 (PSR ¶¶ 12-21). And without defense objection, the final PSR applied a four-level increase for Ricks' role as an organizer or leader of a criminal activity involving five or more participants (or that was otherwise extensive). *Id.* at PageID.264 (PSR ¶ 37).

At Ricks' sentencing on February 22, 2016, the then-assigned district judge adopted the final PSR—including the leadership enhancement under § 3B1.1(a)—and then sentenced Ricks principally to 200 months' imprisonment. ECF No. 122. The judgment was entered the next day, ECF No. 125, neither Ricks nor the government filed a notice of appeal, and Ricks' conviction and sentence became final fourteen days after the entry of judgment. *See* Fed. R. App. P. 4(b)(1)(A).

Now, nearly a decade later, Ricks has submitted a pro se request that his final PSR be amended to "remov[e] the leadership enhancement" under § 3B1.1(a).  ECF No. 214, at PageID.1155.[1]  Ricks argues that the leadership enhancement is inappropriate because he had "no codefendants" under his own indictment.  *Id.*  Ricks further asserts—without elaboration—that there is no factual basis "to support the leadership enhancement because the activity did not involve 5 or more participants, therefore, the enhancement should be removed."  *Id.*

The government opposes the motion, *see* ECF No. 217, and the court opts to resolve it without a hearing, as authorized by Criminal Local Rule 12.2(a)(1).

## **DISCUSSION**

As the preceding paragraphs make abundantly clear, the final PSR properly identified at least five—indeed, more than five—participants in Ricks' drug trafficking conspiracy, and therefore, as a matter of fact, the requirements of § 3B1.1(a) were met. It does not matter that some of the participants in Ricks' drug trafficking conspiracy were charged in separate instruments, rather than as codefendants under Ricks' indictment; nor is it consequential that some of these participants went altogether uncharged.  Application Note 1 to § 3B1.1 explains that "participant" means "a person

---

[1]  This is not merely an academic exercise for Ricks; the previously assigned district judge recently denied his motion for a reduction of sentence, ECF No. 213, and Ricks appears to believe that a future motion of the same type would more likely be granted if his PSR were amended in the manner he now requests.  The court has no occasion here to consider whether Ricks' assessment is correct.

who is criminally responsible for the commission of the offense," and that person "need not have been convicted." If a person need not have been convicted to count as a "participant," it logically follows that they need not have been charged, let alone charged in the same indictment as the defendant at issue. Moreover, Ninth Circuit precedent allows even the involvement of non-participants—that is, individuals who are involved in but not criminally culpable for criminal activity—to be considered "in determining whether the criminal activity was otherwise extensive." *United States v. Leung*, 35 F.3d 1402, 1406 (9th Cir. 1994). So "[e]ven if the district court erred in finding" that there were five or more participants in Ricks' criminal activity, the § 3B1.1(a) enhancement could still hold its ground. *United States v. Cruz-Delgado*, No. 22-30084, 2023 WL 6620302, at *2 (9th Cir. Oct. 11, 2023).

The above reasoning would, in the ordinary case, lead the court to deny Ricks' motion on the merits. But there is a wrinkle here: Ninth Circuit case law holds that "once the district court has imposed [a] sentence, the court lacks jurisdiction under Rule 32 to hear challenges to a presentence report." *United States v. Catabran*, 884 F.2d 1288, 1289 (9th Cir. 1989). And so at least under Rule 32 of the Federal Rules of Criminal Procedure, the court does not have the power to deny Ricks' request on the merits.

That leaves the question of whether the court might have some other source of authority to consider Ricks' request. *Catabran* does not obviously answer that question. It speaks specifically of a court's lack of jurisdiction under Rule 32, and thus does not

6

rule out—at least not explicitly—the possibility that there might be some other source of authority.  Nor is it dispositive that *Catabran* appears not to have contemplated the possibility of any other sources of jurisdiction; the case was decided over three decades ago, well before the First Step Act of 2018 and other changes to federal sentencing law and post-conviction motions practice.  It is at least theoretically possible that some statutory amendment over the last three decades has granted jurisdiction that did not exist when *Catabran* was decided.[2]

The government suggests generally that it would be "inappropriate" for Ricks to contest his final PSR "in this post-conviction posture," and argues that the "time to lodge such an objection was at sentencing or on appeal."  ECF No. 217, at PageID.1159.  That may well be right. But the government does not distinctly address the question of whether this court has the jurisdiction to consider—and deny on the merits—Ricks' request.  Ricks, for his part, similarly does not address the question of whether there exists any authority on which the court could rely to consider his request.  In fact, he does not identify any jurisdictional ground for his request at all.

---

[2]   It is also possible that when *Catabran* spoke of a lack of "jurisdiction" in 1989, it was using the word in the "less than meticulous" manner more characteristic of that period of time.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006) (noting that "[s]ubject matter jurisdiction" had been "sometimes erroneously conflated with" the "merits-related determination" of whether a "predicate for relief" has been established (cleaned up)).

The court's own independent research has turned up no basis for exercising jurisdiction over Ricks' request. To the contrary, it has turned up more recent unpublished Ninth Circuit decisions generally implying that there is no such jurisdiction. *See, e.g.*, *United States v. Lee*, 727 F. App'x 335, 336 (9th Cir. 2018) (citing *Catabran* for the proposition that "the district court lacked authority to correct alleged factual inaccuracies in the PSR after [the defendant's] sentence was imposed"); *United States v. Turman*, 574 F. App'x 747 (9th Cir. 2014) (same).[3] These decisions, however, are unpublished and therefore nonbinding. And they do not squarely address the fact that *Catabran* was decided over three decades ago (and that it therefore cannot, without further analysis, support the conclusion that there does not exist *any* basis for jurisdiction today) or the fact that *Catabran* speaks only of the jurisdictional limits of Rule 32 (and therefore does not explicitly rule out the existence of other sources of jurisdiction).

Under these circumstances, the court can only reach the modest and somewhat tentative conclusion that—based on the briefing and record before it—it cannot exercise jurisdiction over Ricks' post-conviction request to modify his PSR because the court has not found any basis for exercising such jurisdiction. Federal courts are courts of limited

---

[3] To be sure, both *Lee* and *Turman* identify Rule 36 of the Federal Rules of Criminal Procedure as possibly authorizing a court to make a purely clerical post-conviction modification to a PSR. But Ricks' modification request cannot be characterized as clerical, and so he cannot rely on Rule 36.

8

jurisdiction, and when a basis for exercising authority cannot be identified, then authority should not be exercised.

Granted, given the sparse briefing the court has received to this point, the court cannot definitively rule out the theoretical possibility that a jurisdictional hook might exist. And so, were there any doubt about the merits of Ricks' request, the court might have called for supplemental briefing on the jurisdictional question. But there is no doubt about the merits: the leadership enhancement in Ricks' final PSR was well supported and there is no reason to remove it. Supplemental briefing on the jurisdictional issue would, therefore, be an exercise in futility. Even if Ricks were able to identify a jurisdictional hook—or the government were to persuasively concede that one exists—the court still would not grant Ricks' request. The result of finding a basis for jurisdiction would merely be the denial of Ricks' request on the merits instead of for lack of jurisdiction. The court declines to task the parties with an impractical exercise of that sort.

## CONCLUSION

For the foregoing reasons, Ricks' request is DENIED for lack of jurisdiction. Had the court been able to identify a basis for exercising jurisdiction, it would have denied Ricks' request on the merits.

//

//

IT IS SO ORDERED.

DATED: June 20, 2025, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

Cr. No. 15-00132 MWJS; *United States of America v. Bobby Ricks, Jr.*; ORDER DENYING DEFENDANT'S REQUEST FOR POST-CONVICTION MODIFICATION OF PRESENTENCE INVESTIGATION REPORT